The next case on the docket is Cahoon v. Crowe, 524-0100. If counsel for the parties would like to situate themselves and get ready, you may do so. Cahoon v. Crowe Okay, is counsel ready to proceed? Yes. Are you Mr. Lanter? Louder. Louder. Yes. I'm sorry. I am. Mr. Louder, you represent the appellant? Yes. You may proceed when you're ready, sir. May it please the Court, good morning. My name is Aaron Louder. I represent the plaintiff appellants in this case, Christopher Michelle Cahoon, guardians of the disabled adult Emily Cahoon. We're here today because the trial court entered a summary judgment in favor of the township defendants, Conta Township and Ronald Scudder, the highway commissioner. The trial court entered summary judgment on the issue of proximate cause. Proximate cause is ordinarily an issue of fact. And in this case, summary judgment should have been denied because there are material issues of fact in dispute, and reasonable persons may draw different inferences from the both undisputed and disputed facts. If reasonable persons can draw different inferences from the facts, summary judgment is improper. It preempts the plaintiff's right to a trial by jury and have the jury resolve factual disputes. In this case, the trial court resolved factual disputes and decided to try the case at summary judgment stage rather than decide if a triable issue existed. The plaintiffs are relying in this case on both direct and circumstantial evidence to establish proximate cause. Circumstantial evidence is appropriate to establish proximate cause to defeat summary judgment so long as the reasonable inferences can be reasonably drawn from the evidence. And in this case, the reasonable inference that can be drawn from the evidence is that the washboard condition on 600 East caused Mr. Crow to lose control of his vehicle and leave the roadway, causing this collision. The factual dispute- Mr. Louder, you need to be very careful with your terms because you just said it was a washboard condition. And I think that's one of the issues, isn't it? Whether it was a cause or a condition. And I'm sorry, yes. By condition, I meant the characteristic of the roadway, the defect. It's been called effect. Various terms have been used to describe the washboard that was present. One of the issues is condition because it was a characteristic of the roadway, a defect that existed, been measured and documented by the police officers. And the reasonable inference that we're drawing from the evidence is that that was a cause of Mr. Cahoon- sorry, Mr. Crow losing control of his vehicle. One of the factual disputes in the trial court result was whether the vehicle was already out of control when first observed by the eyewitnesses in this case. Neither argument of the vehicle, Mr. Crow or Ms. Cahoon, can recall the collision, so we're relying upon the eyewitnesses for what occurred. Lucy Woodcock testified specifically on page 563 of the record that the vehicle was under control when she first observed it. She first observed it for, I believe she said, 13 to 14 seconds while the vehicle was bouncing, but otherwise in control, traveling within its lane on travel on the roadway, proceeding north, and then it subsequently began to fishtail, become angled in the roadway and lose control. Her husband, Roger, also testified that as he observed the vehicle bouncing, he could see that it began to lose control. Nonetheless, the defendants argued that the vehicle was already out of control when seen by the Woodcocks and therefore the plaintiffs have insufficient evidence to establish what caused the initial loss of control because no one was there to see it. The trial court agreed with that and throughout its order was very clearly had decided that the vehicle was already out of control when it was seen by the Woodcocks and that fact being resolved in the defendant's favor rather than being viewed in light of the favor of the plaintiff, resulting in the trial court then deciding that the plaintiffs did not have sufficient evidence of proximate cause. That's a trial issue of fact that should be determined by the jury in this case. In addition, the trial court and defendants argued that even if the vehicle was losing control or out of control, we are still relying upon speculation to prove our case under proximate cause when we are relying upon our reasonable inferences from the evidence. The distinction between speculation and inferences from the evidence can be seen in some of the cases we've provided, specifically the case of Roberts v. Highland, which was decided by this court last year. The issue in that case was where an accident had occurred. A father had not seen the accident. He had been on his front porch. His daughter was riding her bike in the driveway. He heard a collision, came to the scene, and saw a truck angled toward the driveway and the daughter in the driveway injured. And the trial court in that case had ruled that the father was speculating as to where the accident had occurred and how the accident had occurred because the police report, I believe, had it occurring in the street. And defendants argued, as in this case, that there's any number of things that could have happened. The accident could have occurred in the street and the truck rolled over. There was no way to know. And the trial court found that the father was able to testify to his personal observations. He was not speculating. He observed the bike in the driveway. He observed the truck angled. And from that, he was able to reasonably infer, and the jury was able to reasonably infer, that the collision had happened because the truck left the roadway and entered the driveway. In this case, the Woodcots are not speculating about what they saw. They saw the vehicle bouncing. They also were familiar with the roadway and had driven over this washboard and had difficulty controlling their vehicle. They knew where it was. They saw the vehicle bouncing in that area. And they concluded and reasonably inferred right at the scene of the collision, Ms. Woodcock stated to the police that the vehicle left the roadway because of the washboard defect, which she called the bounce. Talk to me about your expert's opinion as to the vertical forces caused by the washboard and his or her opinion. Sure. So Mr. Johnson, Kevin Johnson of Accident and Reconstruction, has testified that the vertical sources seen by the Woodcocks was the only explanation for that vertical force would be the washboard. He was asked a number of questions. Will cars lose control for other reasons? Don't they? And he said, yeah, of course they do. But in this case, there would have been some other outcome. He would have seen something else. If there had been, say, debris in the roadway or an indication that a driver had left the roadway further south, something else to explain what the loss of control was. Here, the only indication that the vehicle was losing control was the bouncing. And Mr. Johnson testified that there's no other explanation in the record to explain the bouncing and that the vertical defect, sorry, the vertical effect would be caused by this washboard effect. And as the vehicle proceeded, the vehicle then loses control and contact with the roadway and ultimately lost control. Mr. Johnson testified that despite the fact that vehicles can lose control for other reasons, in this case the most probable outcome was that the washboard caused the loss of control. What if the car lost control and then hit the washboard in the roadway? Wouldn't you have the same vertical effects? Or did your expert talk about that? He did talk about that, Your Honor. He did or did not? He did. He did. He stated that there would be some other outcome, and I think what that outcome would be would depend upon what the other cause was, if the vehicle was already out of control. Well, Mike, was there some testimony that your expert testified that if the out-of-control vehicle hit the washboard area, that it is more likely than not that the vehicle would not have hit the tree? In other words, the injuries would have been less. If it had not hit the washboard? I'm sorry, I missed that. If it was out of control, then hit the washboard, the injuries would not have been as severe. I don't recall that testimony. Your Honor, I remember testimony indicating that the speed and the washboard combined to result in the injury. There's some other specific testimony. I'm sorry, I'm not recalling it. He didn't testify that the injuries would have been less severe? That they wouldn't have hit a tree, in other words? I believe he said that the speed and washboard combined to result in him hitting the tree. I'm sorry if there's something else specific. But not the opposite? Correct. I believe that's correct. And so that you needed both, which is also what Sgt. Berkler testified to, that both forces were acting to result in the injury and the collision. Sgt. Berkler's opinions were not considered by the trial court of reference in the order at all. Mr. Johnson did state that the loss of control was the uneven surface, described as a washboard in conjunction with the testimony of the eyewitnesses, and that's found in page 2, 2397 through 98 of the record. Mr. Johnson's testimony rules out other possible explanations for the loss of control. There's no evidence of any other loss of control in this case. Plaintiffs are simply pointing out that something else could have happened, and we can't rule out that something else could have happened. Well, if the car was out of control before it hit the area of what we're calling the washboard, you still would have had the vertical forces, according to your expert. Yes. So what difference does it make if the car is out of control before it hits the washboard or whether the washboard causes it to go out of control? You still have the vertical forces. Is that true? That is true. The vertical forces would have still acted on the vehicle from the washboard. I believe if there had been already a previous loss of control, there would have been some other indication that the vehicle was out of control. As Ms. Woodcock testified, the vehicle was still traveling north in its roadway. It hadn't begun fishtailing, so there was really no other indication the vehicle was out of control other than the bouncing by the washboard. But to how long did she see it before she noticed the vertical bouncing? The vehicle was bouncing when she first observed it. So she didn't get an opportunity to see it before the description of the bouncing occurred? No. Both her and Roger testified that the vehicle was bouncing when they first observed it. Why did the township owe your client a duty of any kind in this case? The duty to maintain the roadway is codified in the Tord Immunity Act under 745 ILCS 10-3, sorry, 10-3102A, the duty to maintain the roadway in a reasonably safe condition. So that is the basis of the duty. It's a common law duty to maintain this property in a reasonably safe condition, and our argument here is that the washboard had caused the road to become unsafe and deteriorated to the point that it should have been repaired by the township. Don't you have to show some element of foreseeability, though, in order to get to proximate cause? Yes, and I believe we addressed this in our briefing, at least at the trial court. The issue of foreseeability is Mr. Scudder, as well as the county engineer, and I believe another individual from the township, they all testified that they're aware that a washboard can cause vehicles to have difficulty losing or controlling vehicles, it can cause loss of control, and it's a safety concern. I believe they all testified to that in general, that the washboard can cause vehicles to lose control. Counsel, the defendant has raised the Port Immunity Act in its brief. There is no cross appeal. Do we have jurisdiction to consider that? I do not believe it's properly before the court on appeal. In this case, the trial court ruled on the treaty of the motions as separate, effectively determining that it was not entitled, the township was not entitled to immunity under their affirmative defense, under the discretionary immunity clause, and then also then ruled in favor of them on the proximate cause issue because one of the rulings went against them in that case, the immunity defense. It should have been raised by cross appeal, and it's not properly before the court. I believe I cited authority for that in our brief, which I can locate, if you'd wish, but I don't have the citation handy. So first, I do not believe it's properly up on appeal. I understand that the court could affirm on any grounds they chose to. I can address the immunity issue on the merits. The trial court was correct in deciding, I briefly, the trial court was correct in deciding that Monson and Andrews' recent Supreme Court guidance required someone. I'd like to go back to proximate cause. Okay. Are you required to establish that the vehicle was in control before encountering the washboard? I don't believe we're required to establish that. Mr. Johnson, I believe, testified still, and Mr. Sergeant Burkler also testified that the washboard was the cause of it losing control, and had it not encountered the washboard, it would not have lost control and left the roadway. It certainly hadn't left the roadway prior to that, and Ms. Woodcock testified that the vehicle was otherwise being driven. Is there any authority? No, Your Honor. For the proposition that we need to establish it was out of control? What about the lack of tire marks? What does that indicate about the lack of control? Well, I believe Mr. Prisvilla testified that he would not have expected tire marks in the area where the bouncing had first occurred because the vehicle was still under control. So the tire marks do exist further north on the roadway where the vehicle then ultimately lost control. So I believe that actually favors the plaintiff's position that the vehicle was otherwise under control when it encountered the washboard, and that's why you see tire marks subsequently further north. We keep coming back to the loss of control. How do you address the Burnaby case versus Cairn Able South? I mean, that case does hinge on the timing of the loss of control, correct? Correct. Whether there was a condition or cause that I believe Justice Gates raised. Can you help address that? I believe in the Burnaby case there was no actual allegation that the roadway condition itself caused the loss of control or that the road was unsafe in any way. I recollect correctly that the allegation, I believe that the vehicle lost control for some unknown reason or other reason and encountered a defect that was alleged to exist. So in this case, the allegation is that the vehicle did lose control due to the condition of the roadway, which would distinguish it from the Burnaby case. So not the timing. It wasn't the timing necessarily then. No, I believe it was whether the road condition contributed to the loss of control and cause. Would you agree that speeding on a back road is a vehicle? Yes, I would. I believe that Mr. Scudder and other township defendants testified to that. I believe they said they personally speed on those back roads. Is speeding by itself a superseding or intervening cause? No. I believe that I cited specifically the case law in our brief on that issue, that speeding by itself is not an intervening cause. It's not out of the ordinary. It's not extraordinary event. It is very foreseeable. And in this case specifically, the witnesses testified they're aware of it. So any other questions? I believe I'm out of time. I have one more question. Okay. Thank you. If you will have some time after your co-counsel has remarks, we may have questions then. Okay. Thank you for your time. Thank you, Mr. Scudder. Okay. We'll hear from the township, Ms. Shelley. Good morning, Your Honors. May it please the Court, my name is Stacy Shelley. I represent the Appalese in this case, Condit Township, and the Condit Township Highway Commissioner, Ronald Scudder. As the trial court noted in its lengthy decision, the central facts of this case are simple and sad. But those facts, even when viewed in the light most favorable to the plaintiffs, do not create a triable issue of fact because any finding in favor of the plaintiff on those facts would necessarily be based on speculation and conjecture, which cannot withstand summary judgment. If this case is actionable, then Condit Township and every other local governmental entity responsible for a road has risen to the level of being the insurer of everyone driving on the roadway, regardless of how fast, reckless, or out of control they may be driving. That is not what Illinois law has ever required. What about the questions I raised about whether we have jurisdiction in the civicals issues? With respect to the discretionary immunity on the 2-01? Discretionary immunity or tort under absolute immunity? The 2-2-0-1 is the absolute immunity provided by 2-2-0-1 of the Tort Immunity Act. I believe this court does because there wasn't anything for me to cross-appeal. I think that is what the decisions focus on when they talk about that. The cases that the plaintiffs cited in their brief, both Charlotte Watson v. Legacy Healthcare, we didn't cross-appeal because we didn't have a basis to. So if the plaintiff hadn't appealed, I could not have appealed the ruling in my favor and said, yes, but, your honors, I'd also like you to consider whether or not we were also entitled to tort immunity. I got the relief I asked for, which was complete summary judgment. And so I didn't have a basis to appeal any ruling to the appellate court. We asked for the same relief on two grounds. And because neither of those grounds affects the co-defendant, then there is no basis, there was no basis for me to file an appeal. And this court has jurisdiction under 304A. The cases that counsel cited in their reply brief, the first case, Watson v. Legacy Healthcare, talks about issues that if they decided that issue on appeal, if the appellate court decided that issue on appeal, would affect the co-defendant who was still pending in the trial court whose case was not up on appeal. In addition, there was another pending appeal at that time that had been taken up on a 308 certified question that was going to address those very issues. So for that reason, the appellate court declined to decide those issues. On the Cincinnati Insurance v. Chapman case that counsel cited, that case involved cross motions for summary judgment. There was a finding against the third-party plaintiff that the insurance policy didn't apply. They did not appeal that finding, so it wasn't properly before the court. And instead, I'd like to draw this court's attention to a case called Lewis v. Rutland Township. It's 359LF3D1076. That case was similar to this case in that there was two defendants. That was a case that involved construction in a township. They sued the construction company. They also sued the township. There was a summary judgment. The plaintiff attempted to oppose it with an affidavit from an expert. The trial court struck that affidavit, and the case was appealed. So on the issue on appeal was that the trial court had inappropriately One of the issues on appeal was that the trial court had inappropriately stricken that affidavit. That motion to strike cited three separate grounds. They said all of the court's order granting the motion to strike cited only the second reason proffered by the defendants. We find ample ground to strike in the other two. So that is similar, quite similar procedural posture. Multiple reasons to grant relief. Trial court picked one. The appellate court on 304A said we're going to consider the others. I believe that's appropriate to consider for that reason in this case as well. Okay. I'd like to address this question of losing control versus out of control. And I think Your Honors appropriately understand the issue. I would submit that losing control, going out of control, that is a distinction without a difference. And the plaintiff doesn't cite any legal authority to support that, the bouncing, which both of their experts testified to was a loss of control. Prisvilla, the road guy, I guess, they're both reconstructionists. He's the engineer. So he gave opinions about the road. Agreed unreservedly to the question. So when, I don't know, the Woodcocks or the witnesses saw the vehicle, it's already out of control, right? Yes, sir. Kevin Johnson, the reconstruction expert, wanted to equivocate on that. But ultimately, you know, he agreed so the Woodcocks see the vehicle, it's already bouncing. Yes. That, when they see it cross the hill, that is some distance from the area where this alleged washboard exists. Yes. They didn't see it go over that area? No. So nobody saw it go over that area? Right. So is a vehicle that is bouncing one that is under control? And he testified when, because the wheels aren't making constant contact with the pavement, that is not a vehicle that is in control. But the vertical forces, as I understand the testimony, it's more likely than not that the washboard effect, which I think your client denied existed, caused the vertical bouncing that we see. Or was it likely caused? That was the testimony, Mr. Johnson. But your Honor hit it right on the head in your examination of, re-questioning of appellant's counsel, that nobody knows what was happening. Even taking that in the light most favorable to the plaintiff, nobody knows what was happening before it got there. And that is this big vacuum of information. Well, frankly, we don't even know that it drove over the washboard. So there's no testimony. Yes, it had to drive over that particular area because it was only on one front. It's not speculation if you know the direction the vehicle was traveling. It wasn't traveling from the opposite direction to the witnesses. It is speculation, your Honor, because you don't know where the current vehicle was at on the road when it happened. And that washboard, alleged washboard, does not cover the entire both lanes of the road. It's in one section. There's no evidence whether he's on the road, off the road, on the other side of the road, where he's out on the lane. So it is speculation as to what he drove over. Because what we basically know is the vehicle was south of that area at some point, and then the Woodcocks see it when it's north of that area. But there are some inferences that you can make. Is that correct? I mean, the case law supports that some inferences can be made, correct? Well, with respect to what particular evidence? With respect to the loss of the timing of the loss of the control and the washboard. I mean, you mentioned that they may not have even crossed the washboard. I mean, you can make that inference, though, correct? And the case law supports that some inferences can be made. I don't think that the case law specifically supports the inference that you can make those inferences in that case, in this case, with this particular situation. I think if you look at the Monaghan v. DiPaolo case, which I think it's Perk Ridge Village, or the Geelan v. Kankakee case. But those cases are both very similar in that they involve unwitnessed losses of control on municipal roadways. But you touched the key. There was no witness in those cases, correct? There was no witness to the loss of control in this case, either. I think the Monaghan case, there was a witness that saw it, like, after it had lost control. And that's what we have here. And what the Monaghan case talks about and what Judge Dyer quoted in his opinion here, and it's been the law in Illinois for nearly 40 years, I think it's a 1986 case, that there's not entitlement to a presumption of control. There are a number of possibilities. But absent any other evidence, you're not entitled to the inference that a thing occurred was probable. And that's the problem that the plaintiff has here. That's the unsolvable problem. Is there not – there's no evidence that leads to a probable inference. There is an almost infinite number of possibilities. And that's why we can't – it requires speculation. You have to speculate to fill in all the blanks about all of the things that happened before the woodcots saw the vehicle cresting the hill bouncing. Let me answer this question. What difference does it make whether this vehicle was out of control before it hit the area of the washboard or not? Why is that such a big deal as to when it became out of control? We know that proximate cause is a cause, not the cause. Because proximate cause can't be based on speculation. Let me interrupt you there because you keep using speculation. We have an expert witness who will say that the bouncing was caused by the vertical forces which came into effect as a result of the washboard. So we have at least one expert who's willing to go on record saying that a likely cause of this accident was the washboard. So my question is, let's suppose this fishtail out of control and then hit the washboard. So it was out of control before. We know from the expert that the vertical forces – the bouncing was caused by these vertical forces. So what difference does it make whether it was out of control before? Well, because then you come to the cause versus condition analysis. Exactly where I want to go. Right. So which is if a vehicle is already out of control when it hits the alleged condition, which – You're claiming this is a condition, not a cause. I'm saying that there's not even enough evidence to make that determination. In a lot of the other cases, municipal cases, that talk about cause versus condition, you've got other additional testimony about what happened where then the courts have said they've ruled on summary judgment, sole proximate cause, that based on this evidence, no reasonable jury could ever find sole proximate cause because the illegal criminal or potentially criminal actions of the drivers are the sole proximate cause. Here you have a police officer who testified to the problem of defects in the roadway. Even though your client doesn't acknowledge, now we have a question of fact. We have your client who says there's nothing wrong with the roadway, and we have a police officer – I think he was a police officer – who says he noticed a defect in the roadway. Doesn't that raise a question of fact? It does not, Your Honor, because you don't know what happened before they got there. And you don't get to guess. You don't get to just pick the most – That was my original question. Why does that matter? What happened before? We know that the expert, if you will, the reconstructionist, gives us some information as to a cause. Not the cause, but a cause. Because a jury could never determine – because there's no information about how that vehicle was operating, where it was at, what speed was going on inside of it, anything about the operation of the vehicle before it got to the alleged washboard. So they would never be in a position to even decide if it was a cause versus a condition. There's nothing there. They have to guess about everything based on no roadway evidence, no EDR, no eyewitness testimony. They have to fill it all in based on possibilities, not probabilities. And we just don't submit those kinds of cases to juries. See, I'm about to run out of time. I'm giving you doubts in revenue, as I understand. No, that's – Your Honor's time. I'm happy to answer whatever questions you've got. The law is incredibly well settled that municipalities are not the insurers of the safety of the roadways. It's simply not possible. In this case, as I've discussed, particularly under these facts, where there's no evidence other than speculation that the at-issue vehicle even drove over or through the alleged area of this defect, reversal of summary judgment would, in effect, make Condit Township the insurer of the safety of every driver on their roads. It's not what the legislature has contemplated. There is a vacuum of evidence in this case right up until Woodcocks. See the Monte Carlo bouncing as it crossed the hill. Fact, plaintiff's expert discovery is closed. We know everything there is to know about where we're going to know. And there's nothing – and there's not anything but speculation as to why, how, where Monte Carlo had its initial loss of control. Plaintiffs cannot base a question – cannot create a question of fact based on speculation and a trial court appropriately granted summary judgment. We ask this Court – that this Court affirm the trial court. No further questions. Thank you, Your Honor. Thank you for your arguments. Mr. Lambert. Mr. Petal. Thank you. I would like to address a couple of points raised on argument here. First of all, the defendant argues that the – whether the vehicle was in control or out of control is a distinction without a difference. And I just want to reiterate Ms. Woodcock's testimony where she was asked by defense counsel whether the vehicle was bouncing. And she said yes. And then on page 563 of her – of the record indicates on question by defense counsel, you saw the vehicle bouncing for 13, 14 seconds. Is that correct? She says, uh-huh, yes. Defense counsel asks, and it was in control? And she says it was. He was keeping it on his side of the road. Defense counsel says, so keeping it in control on his side of the road? She says yes. And so that is important because of what we get into with the Monaghan decision, indicating that there's no witness of the initial loss of control in Geelan. In this case, it is. There is evidence, an eyewitness testimony of the initial loss of control, which makes the Monaghan and Geelan cases distinguishable from this case. This case is also similar to a third district case from earlier this year we cited to in our reply brief, Tromper v. Union Pacific Railroad. In that case, fairly factually similar scenario. A single vehicle collision happens as the driver is driving over a railroad track and feels his wheels suddenly jerk to the right and he loses control. Now, we don't have Mr. Crow's testimony in this case, so we don't have his testimony about what happened to the vehicle, but we do have eyewitnesses who saw it from the outside of the vehicle what had occurred. And in that case, the defendant made a similar argument. Well, any number of things could have caused that wheel to jerk. It could have hit something else. It could have been something in the truck. Any other number of things could have happened. There was an expert who was able to testify based on his observations of the roadway condition where the asphalt had kind of separated from the railroad track, that what most likely happened, what probably happened, was that the wheel of the vehicle struck the railroad track and then pivoted to the right, and it was consistent with the eyewitness testimony. Mr. Johnson's testimony is very similar in this case. It is not speculative. It is reasonable inferences drawn from his own investigation of the scene, his familiarity with the roadway, the documentation by the police officers of the roadway, and the eyewitness testimony of the Woodcocks. So we are allowed to make those inferences. And the suggestion that, you know, there's no evidence that the vehicle was ever in control, Ms. Woodcocks said she saw it in control. There's the evidence of that. There's no evidence that the vehicle even crossed over the washboarding. Ms. Woodcock again testified she was asked about it bouncing, and she's on page 554 of the record, and this car was bouncing toward the top of the hill, yes, and this is the area where you knew there were bumps in the roadway if one was coming north. She said yes. You would experience the same thing with your vehicle. And she said yes. So that is the evidence that we have in this case, that the vehicle was traveling over the washboard, the vehicle was otherwise under control until it started bouncing and then lost control. And Kevin Johnson was able to testify that most likely what probably occurred in this case was that that was the reason the vehicle lost control and left the roadway. Sergeant Burkler, the cop you made reference to in questioning, said very plainly there were two causes of this collision. One doesn't happen without the other. He was driving the vehicle. He was under control before he hit the washboard. He encountered the washboard. He then lost control. So for those reasons, because the evidence in this case allows the inference that the vehicle was operating under control, encountered the washboard defect, began bouncing and then lost control, the jury should be able to decide those factual issues. The trial court should not have decided those factual issues, should not have granted summary judgment, and we ask that the order be reversed and the case be remanded for jury trial. If you have no further questions, I'll otherwise rest my briefs. Okay, thank you. Thank you. Thank you, Ms. Johnny. This is obviously an interesting and intricate case. We appreciate your briefing in this matter. We will take the case under advisement and issue an order in due course.